# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 CR 473 - 3, 4, 5, 6 | **DATE** | 10/24/2001 |
| **CASE TITLE** | USA vs. D. Bravieri, G. Bravieri, Canova, Clarke | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held. Enter Memorandum Opinion and Order. Defendant Clarke's motion to dismiss [117], as joined by D. Bravieri, G. Bravieri and Canova, is denied. Motion of D. Bravieri to dismiss Count VI [82] is granted without prejudice to the government recharging. D. Bravieri's motion to sever [81] is denied as moot. D. Bravieri's and G. Bravieri's motions for early return of trial subpoenas [79] [87] and motions for immediate disclosure of evidence [80] [87] are granted as agreed. D. Bravieri and G. Bravieri are set for change of plea hearing on 12/6/01 at 12:30 p.m. M. Canova and D. Clarke are set for change of plea hearing on 12/5/01 at 10:00 a.m.
(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 25 2001 date docketed | 154 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MD | courtroom deputy's initials | 01 OCT 25 AM 7:57 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 01 CR 473 |
| ) | |
| RONALD JOHNSON, et al., ) | |
| ) | |
| Defendants. ) | |

DOCKETED
OCT 2 5 2001

## MEMORANDUM OPINION AND ORDER

MOTION TO DISMISS INDICTMENT

Presently before the court is defendant David Clarke's motion to dismiss the indictment against him for violations of the False Identification Crime Control Act, 18 U.S.C. § 1028, which motion has been adopted by defendants Deborah Bravieri, George Bravieri and Michael Canova. Defendants are charged with causing the Illinois Secretary of State to produce and transfer new driver's licenses to defendants, by paying money or recruiting others to pay money to defendants Ronald Johnson ("Johnson") and Phillip Smith ("Smith") to have Johnson and Smith fabricate and send to the Secretary of State court certifications representing that their driving while under the influence ("DUI") convictions and/or other violations had been vacated or dismissed,[1] in violation of section (a)(1) prohibiting "knowingly and without lawful authority produc[ing] an identification document" and (a)(2) prohibiting "knowingly transfer[ing] an identification

---

[1] In order to regain a driver's license that has been revoked, such as for a conviction for a driving under the influence "DUI" violation, a driver must provide the Illinois Secretary of State with a certification from the Clerk of the Circuit Court in the jurisdiction in which he was convicted, indicating that the conviction was either vacated or dismissed. Upon receipt of such certification, the Secretary of State removes the conviction from the driver's abstract and mails the driver a Rescind Order indicating that the revocation had been rescinded. A driver can then present the Rescind Order to any Secretary of State facility and receive a new driver's license.

1

154

document . . . knowing that such document was . . . produced without lawful authority[.]" (Defendants are also charged under 18 U.S.C. § 2, for having "willfully cause[d] an act to be done which if directly performed by him or another would be an offense against the United States," thereby imputing the production and transfer of the identification documents to the defendants as principals.)

Defendants first argue that section 1028 only criminalizes the production of documents that do not contain accurate identifying information and thus does not cover the driver's licenses here which accurately reflect the identity of the holders. Defendants' reading is contrary to the plain language of the statute. The statute criminalizes not only production of false identification documents but production of identification documents without lawful authority. "[L]awful authority" means under statutory or regulatory authority. *See* H.R. Rep. No. 97-802 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3519, 3528. Although the Secretary of State has authority to issue a driver's license, he must do so on the basis of authentic court certifications. Thus, that defendants caused the Secretary of State to issue driver's licenses to them based on fraudulent certifications fits squarely within the language of the charged offenses. The legislative history also provides an example of an unlawfully produced identification document that focuses not on the nature of the identifying information but, rather, on the failure to follow requirements for its issuance. *See id.* at 3528 ("A person, such as a clerk, who is authorized to issue identification documents upon satisfaction of certain requirements, could be acting without lawful authority if he issued an identification document knowing that the requirements had not been fulfilled."). Moreover, while certainly one of the purposes of the statute is to combat the use of identification documents that do not accurately reflect the identity of the holder, the purpose is also much

broader, namely to regulate activities involving fraudulent identification documents that affect interstate commerce. *Id.* at 3521.

Defendants next argue that if the language of the statute covers the conduct here charged, then it is unconstitutional under *United States v. Lopez*, 514 U.S. 549 (1995). In *Lopez*, the Court held that the Gun-Free School Zone Act, 18 U.S.C. § 922(q), making it a federal offense for any individual to possess a firearm in a school zone, was unconstitutional because it neither regulated a commercial activity nor contained a jurisdictional requirement that the possession be connected in any way to interstate commerce. *See id.* at 551. The Supreme Court subsequently struck down the Violence Against Women Act, 42 U.S.C. § 13981, for similar reasons. *See United States v. Morrison*, 529 U.S. 598 (2000). Here, unlike the statutes in *Lopez* and *Morrison*, the False Identification Crime Control Act, 18 U.S.C. § 1028, contains a jurisdictional requirement. Section (c)(3)(A) requires that the prohibited production and/or transfer be "in or [affect] interstate or foreign commerce," and the legislative history reflects that Congress intended to "provide broad Federal jurisdiction over violations of this section" and that only a "minimal nexus with interstate commerce" need be shown. *See* H.R. Rep. No. 97-802 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3519, 3532-33. Since *Lopez,* the Seventh Circuit in evaluating other sections of the Gun Control Act has concluded that the presence of such a jurisdictional element is sufficient to overcome a Commerce Clause challenge because it requires the government to prove a minimal connection to interstate commerce in each case. *See, e.g., United States v. Bell*, 70 F.3d 495, 498 (7th Cir. 1995) (Section 922(g)(1)); *United States v. Hardy*, 120 F.3d 76, 77-78 (7th Cir. 1997) (Section 922(u)). Courts that have applied the jurisdictional requirement of section 1028 have likewise required the government to prove at least a minimal

3

nexus between a defendant's conduct and the effect on interstate commerce. *See United States* v. *Jackson*, 155 F.3d 942, 947 (8th Cir. 1998) (affirming conviction where the government demonstrated that defendant's possession of five or more identification documents in violation of 18 U.S.C. § 1028(a)(3), where all but one were issued by the State of Minnesota, "affected interstate commerce by proving that possession of the stolen driver's licenses was integral to [defendant's] scheme to defraud businesses and banks operating in interstate commerce."); *United States* v. *Pearce*, 65 F.3d 22, 25 (4th Cir. 1995) (approving instruction that nexus requirement was satisfied if jury found defendant had an intent to do acts which, if complete, would have affected interstate commerce). In the instant case, the government has charged in the indictment a nexus to interstate commerce and will be required to prove at trial that defendants' conduct has such an effect. Defendants have cited no authority indicating that the government will not be able to do so in this case. Indeed, in other contexts, such as Hobbs Act prosecutions, the government has been able to prove that fixing DUI cases has at least a minimal effect on interstate commerce. *See United States* v. *Anderson*, 809 F.2d 1281, 1286 (7th Cir.1987) ("The fact that a truck driver is able to pay a bribe to obtain a favorable disposition on a ticket for driving under the influence of alcohol increases the probability that he will be able to drive in the future. Thus, the bribery was likely to have a direct effect on interstate commerce."); *U.S.* v. *Castleberry*, 116 F.3d 1384, 1388 (11th Cir. 1997) (testimony of United States Department of Transportation official that failure to prosecute drunk drivers increased the number of accidents on interstate highways thereby impacting interstate commerce). The court, therefore, denies defendants' motion to dismiss the indictment [#117].

MOTION TO DISMISS COUNT VI

Defendant Deborah Bravieri has also moved to dismiss Count VI of the indictment against her arguing that it fails to state an offense because she had a valid driver's license at the time of the alleged offense – June 1997 to November 1997. The government concedes that the court should dismiss Count VI and that it intends to present, as soon as possible, a superseding indictment to the grand jury correcting Count VI. Therefore, the court grants Deborah Bravieri's motion to dismiss Count VI of the indictment [#82].

MOTION TO SEVER

Deborah Bravieri also moves to sever her case from that of co-defendant George Bravieri, arguing that he is able to and will provide exculpatory testimony regarding her innocence of the activity charged in Count VI. Because the court has dismissed Count VI, the court denies the motion to sever [#81] as moot.

## CONCLUSION

For the above-stated reasons, the court DENIES defendant Clarke's (as joined by defendants Deborah Bravieri, George Bravieri, and Michael Canova) motion to dismiss the indictment [#117], GRANTS Deborah Bravieri's motion to dismiss Count VI [#82] without prejudice to the government recharging, and DENIES Deborah Bravieri's motion to sever [#81] as moot.

Date: October 24, 2001          Enter: _____
                                       JOAN HUMPHREY LEFKOW
                                       United States District Judge

5